**Charles J. CHEW, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 584S183.

Supreme Court of Indiana.

Dec. 19, 1985.

Daniel L. Bella, Appellate Public Defender's Office, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with rape, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), and criminal deviate conduct, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979 Repl.). Following a jury trial he was convicted of the lesser-included offenses of rape and criminal deviate conduct as class B felonies. The trial court sentenced him to concurrent terms of twelve (12) years imprisonment. This direct appeal contends that the evidence was not sufficient to sustain the convictions.

We affirm the conviction for criminal deviate conduct but reverse the conviction for rape.

We begin with our familiar standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (Citations omitted.)

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence most favorable to the State demonstrated that Defendant forced the victim into his car at knifepoint and then forced her to commit various sexual acts.

Defendant first contends that the evidence did not demonstrate that the victim acted under compulsion or threat of force. He cites certain evidence in the record which, he contends, demonstrates that the victim consented to his conduct. We disagree.

■ Defendant by this contention merely invites us to reweigh the evidence. A conviction for rape or criminal deviate conduct may rest upon only the testimony of the victim. *See, Bowen v. State* (1985), Ind., 478 N.E.2d 44, 46–47; *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904 and authorities cited. Moreover, this Court has very recently re-emphasized that the question of consent is an issue to be determined by the trier-of-fact dependent upon the particular circumstances, and that a victim of sexual assault need not physically resist when resistance is prevented by threats and fear of injury. *Woodson v. State* (1985), Ind., 483 N.E.2d 62, 64. This record includes substantial evidence that the victim did not consent to Defendant's conduct.

Regarding the rape conviction, Defendant contends that the record does not include substantial evidence of probative value of the vaginal penetration necessary to effect a rape. We agree and reverse that

conviction, which will be of small comfort to Defendant, inasmuch as he was sentenced to concurrent terms upon this charge and the charge of criminal deviate conduct.

■ Ind.Code § 35–42–4–1(a) (Burns 1979 Repl., retained in current code with minor amendments) punished anyone who had sexual intercourse with a member of the opposite sex who was compelled by force or the imminent threat of force. Ind. Code § 35–41–1–2 (Burns 1979 Repl., now recodified at Ind.Code § 35–41–1–26 [Burns 1985 Repl.]) defined "sexual intercourse" as "an act that includes any penetration of the female sex organ by the male sex organ." Thus to prove the crime of rape the State was required to establish that the victim suffered sexual intercourse as defined.

■ There was evidence that shortly after the criminal episode transpired, Defendant drove his automobile, in which the acts had occurred, to a service station. The victim exited from the vehicle with Defendant and told bystanders that he had "raped" her. Her testimony, in court, however leaves much doubt as to whether his violation of her was in fact, a rape under the statutory definition. In both the parlance of men of letters and of those of little grammatical sophistication, the word "rape" has meanings, some of which denote various activities, some of which are carnal. (*Webster's Seventh New Collegiate Dictionary, 1970*).

The victim's testimony upon this matter was as follows:

"Q After that happened, what happened?

A He made me get in the back seat of the car and laid on my stomach.

Q Did you do that?

A Uh huh.

Q Did he tell you to do it?

A (Indicating yes), uh huh.

Q Then what did he do?

A Then he made love to me from the back.

Q Did you have vaginal intercourse? Did you have vaginal sex?

A I don't know what you mean by that.

Q Can you describe the intercourse in the back seat?

A (Indicating no), no.

\*      \*      \*      \*      \*      \*

Q Did the defendant have any type of intercourse with you other than regular, deviate intercourse?

A I don't know what you mean."

Although her vocabulary was obviously limited, from her testimony elsewhere in the record upon the deviate conduct charge, it is clear that she had ample knowledge of the male and female sex organs, and she displayed no reluctance to relate the acts which Defendant compelled. Although we may question her knowledge of Oxford English, her testimony concerning that charge was quite graphic and left no doubt.

Although it is probable that by her testimony upon the rape charge, previously set out, the victim intended to relate that she had suffered vaginal penetration, for us to infer such from her testimony requires speculation not permitted under the requirement that proof be made "beyond a reasonable doubt." Her testimony would simply leave serious doubt in the mind of any reasonable man as to the manner in which she was violated.

■ The record also includes expert medical testimony that a vaginal smear taken from the victim after the assault included a chemical found in semen. However, the testimony did not disclose the presence of semen itself, and at most demonstrated that the victim had engaged in sexual intercourse within about thirty (30) hours of the examination. Thus the expert testimony, in light of the indefinite testimony by the victim, is also too tenuous to permit an inference that the victim suffered vaginal penetration by the Defendant.

This Court has been very liberal in allowing trial judges and juries to infer that

vaginal intercourse occurred based upon somewhat vague testimony by victims, particularly if supported by substantial expert medical testimony. *See, e.g., Thomas v. State* (1984), Ind., 471 N.E.2d 681, 682–83; *Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1113–14; *Page v. State* (1980), 274 Ind. 264, 266–67, 410 N.E.2d 1304, 1306–07, *after remand on other grounds* (1981) 424 N.E.2d 1021; *McClain v. State* (1980), 274 Ind. 250, 260–61, 410 N.E.2d 1297, 1304 *Sizemore; Sandlin v. State* (1979), 272 Ind. 26, 27–29, 395 N.E.2d 783, 784–85. In this case, however, the testimony of the victim and the expert medical testimony were too tenuous to support the conviction for rape.

Although our Court of Appeals upheld a conviction for rape in a case presenting an analogous problem, Judge Staton noted:

"Although the evidentiary presentation by the prosecution was technically correct, the argument could have been avoided on appeal if more specific information had been elicited from the victim."

*McCormick v. State* (1979), 182 Ind.App. 541, 545, N. 1, 395 N.E.2d 856, 858–59, n. 1. It is the responsibility of counsel having the burden of proof to assure that his witnesses' testimony is clear.

The conviction for rape is reversed; the conviction for criminal deviate conduct is affirmed. The cause is remanded with instructions to enter judgment accordingly.

GIVAN, C.J., and DeBRULER, J., concur.

PIVARNIK, J., concurs and dissents with opinion in which SHEPARD, J., concurs.

PIVARNIK, Justice, concurring and dissenting.

I concur with the majority in affirming the Defendant's conviction for Criminal Deviate Conduct.

However, I dissent to the finding that there was insufficient evidence to support the conviction for rape.

The evidence showed the victim did not understand the meaning of vagina and intercourse. She did, however, state that Defendant "made love to her." This is a common term understood to mean the act of intercourse. Such term is not applied to other acts of sexual deviate conduct such as anal intercourse. It takes no speculation nor supposition to know what the witness meant. The victim's statements that she had been raped corroborate this as well as the presence of traces of semen in her vagina. I would affirm the trial court on both convictions.

SHEPARD, J., concurs.