**Mark Steven DOUGLAS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1183S407.**

Supreme Court of Indiana.

Aug. 6, 1985.

William F. Carroll, Carroll & Donaldson, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Latr1ealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction for attempted robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.) and Ind.Code · § 35–41–5–1 (Burns 1985 Repl.). This case was tried before a jury. Defendant-appellant was sentenced to a thirty-year term of imprisonment.

Appellant raises four issues on appeal: (1) whether there was evidence independent of his confession which established the *corpus delicti;* (2) whether appellant's waiver of rights was effected in accordance with the required procedural safeguards; (3) whether appellant's waiver and confession were made voluntarily and intelligently; (4) whether imposition of a thirty-year presumptive sentence constitutes cruel and unusual punishment.

These are the facts which tend to support the determination of guilt. On November 13, 1982, appellant and an accomplice went to Lowell Fitch's home and asked to see Chris Hych, the son of Fitch's cohabitating fiancée. When Fitch responded that Chris did not live there anymore, appellant pulled out a sawed-off shotgun. Even though Fitch tried to slam the door shut, appellant managed to fire two shots. Fitch received injuries to his right hand and left shoulder.

Donna Evans, the daughter of Fitch's fiancée, Janet Hych, was at her mother's home the night of the incident. While appellant and accomplice were talking to Fitch, Evans watched through the window and saw appellant clearly. Evans ran to the bedroom where Fitch kept his gun collection and grabbed a shotgun. She then ran out of the house after the boys and fired one shot. Evans later identified appellant in a photographic array and in court.

I.

Appellant argues that the trial court erred by admitting his confession prior to

the State establishing the *corpus delicti* of attempted robbery. He maintains that the State did not present any evidence, independent of his confession, which established the element of intent to take property from Fitch.

▮ To establish the *corpus delicti* for the purpose of admitting into evidence a confession, this Court has required independent evidence of (1) the occurrence of the specific kind of injury and (2) somebody's criminal act as the cause of the injury. *Cambron v. State* (1975), 262 Ind. 660, 322 N.E.2d 712. The quantum of *corpus delicti* evidence which is required to render a confession admissible has been established previously by this Court. The State does not have to present a *prima facie* case as to each element of the crime charged or prove each element of the crime charged beyond a reasonable doubt before a confession is admissible. *Fleener v. State* (1980), 274 Ind. 473, 412 N.E.2d 778. Independent evidence from which an inference may be drawn that a crime was committed is sufficient to show *corpus delicti*. *Jones v. State* (1969), 253 Ind. 235, 252 N.E.2d 572. Moreover, the State is not required to prove the *corpus delicti* by independent evidence prior to the admission of a confession, provided the totality of independent evidence presented at trial establishes it. *Evans v. State* (1984), Ind., 460 N.E.2d 500.

▮ The totality of independent evidence presented by the State must therefore establish that someone knowingly or intentionally took a substantial step toward taking property from Fitch, by using or threatening force, and this act resulted in serious bodily injury to Fitch. Ind.Code § 35–42–5–1 and Ind.Code § 35–41–5–1.

Prior to introducing appellant's confession, the State presented evidence which established the necessary quantum of proof for the elements of force, bodily injury, and identification of appellant as the perpetrator. Fitch testified that when he tried to shut his door, appellant discharged his sawed-off shotgun at Fitch. The resultant injuries sustained by Fitch to his right hand and left shoulder required hospitalization and therapy. Surgery was also necessary to implant a plastic joint in his index finger. The co-defendant's confession identified appellant as the boy who shot Fitch. In addition, Evans clearly saw appellant during the commission of the crime. She identified appellant both prior to trial from a police photographic array and in court.

The challenged element of intent was clearly established from the totality of independent evidence presented by the State. The co-defendant's confession, which was admitted prior to appellant's confession, recounted a conversation which appellant and co-defendant had when they were in Boys School. Appellant had asked co-defendant whether he knew anyone who had "a lot of guns and nice things in his house." Co-defendant responded by telling appellant about Fitch's home. After appellant's confession was admitted, the co-defendant testified that appellant's question regarding guns was made during a conversation about burglaries. The co-defendant maintains that his role was limited to showing appellant where Fitch resided. More importantly, Zak Hooper testified that he was with co-defendant on November 13, 1982, when co-defendant was walking with appellant en route to show appellant Fitch's house. Hooper testified that appellant was not only carrying a sawed-off shotgun, but expressly stated his intention to rob Fitch. The totality of independent evidence presented by the State established the *corpus delicti* of attempted robbery. There was no error in admitting appellant's confession.

II.

Appellant, who is a juvenile, does not challenge the substantive content of his *Miranda* advisements. He does argue, however, that his waiver of constitutional rights was not effected in accordance with the required *Lewis* procedural safeguards. *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138. Appellant contends that the following five errors rendered his waiver invalid: (1) the parental consultation oc-

curred, and the waiver was signed after appellant gave his oral statement to the police; (2) there was no evidence that appellant was afforded a private consultation beyond the influence of the police; (3) a ten-minute parental consultation is inadequate; (4) the father's advice was not in appellant's best interest; and (5) *Lewis* requires both parents attend the consultation.

To ensure that a juvenile's waiver of constitutional rights is voluntary, *Lewis* prescribed the procedural safeguards to be followed by the police. First, both the juvenile and the parent or guardian must be informed of the right to an attorney and the right to remain silent. Second, the juvenile must be given a meaningful opportunity to consult with his parent, guardian or attorney about the waiver decision. A meaningful opportunity for the parent-juvenile consultation requires timeliness: pursuant to *Lewis,* the consultation must occur after the advisement of rights but prior to the decision to execute a waiver and make a statement. To be meaningful, the consultation must be held in the absence of pressures which result from police presence. *Hall v. State* (1976), 264 Ind. 448, 346 N.E.2d 584.

Where admissibility of a juvenile confession is challenged, it is the State's burden, at the suppression hearing, to prove defendant made a knowing and intelligent waiver of his rights. To determine whether the State has met its burden, we consider evidence which supports the decision of the trial court respecting contested evidence and any uncontested evidence presented by appellant. *Garrett v. State* (1976), 265 Ind. 63, 351 N.E.2d 30. The same standard controls when the issue is procedural safeguards. Based upon this standard, these are the facts pertinent to this issue. On December 17, 1982, the investigating police officers called appellant's parents to inform them that appellant was arrested but only the father came to the police station. The police explained to appellant's father the possibility of adult, criminal charges being filed against his son and of the case being waived to felony court. When the father conversed with appellant he advised his son of the distinct possibility of criminal charges.

The police advised appellant of his rights in the presence of his father and prior to the private, father-son consultation. During this consultation the father urged his son to tell the truth because the father did not want his son to take responsibility for the criminal actions of any accomplice. After almost an hour consultation, both father and appellant indicated to the police that appellant wished to make a statement, thereby effecting a valid waiver. A written waiver was executed after the parental consultation and prior to appellant's written statement. Immediately prior to the written statement appellant gave the police an oral statement which was consistent with appellant's written statement. The police did not threaten or induce appellant at any time. Both father and appellant read the written statement and signed it.

There is no merit to appellant's claims. The *Lewis* procedural safeguards were fully complied with by the police. Appellant was afforded a meaningful and timely consultation with his father. Moreover, *Lewis* does not require both parents be present for the consultation. The coercive atmosphere associated with an interrogation is lifted equally by one parent or an individual who is in *loco parentis. Fortson v. State* (1979), 270 Ind. 289, 385 N.E.2d 429. Furthermore, a waiver of rights obtained in compliance with *Lewis* is not rendered involuntary merely because the father urges his son to be truthful. *Buchanan v. State* (1978), 268 Ind. 503, 376 N.E.2d 1131.

### III.

Appellant claims that his waiver and confession were not made voluntarily and intelligently. He maintains that the police made representations to appellant and his father regarding leniency and the place of incarceration prior to taking appellant's written statement. Appellant also claims that his waiver and confession were not

voluntarily and intelligently made because the police did not inform appellant of precisely the crime charged, potential punishment or possibility of waiver to adult court.

 The legal standard to be applied to determine whether an accused has voluntarily waived his rights is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises or other improper influences. *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165. Once again, the contested-uncontested evidence standard recited in *Garrett* determines our review of the evidence presented.

From the very beginning both appellant and his father knew the police were investigating a criminal incident which occurred at the Fitch home. In fact, appellant assumed that he was being questioned regarding a probable attempted murder charge. During the general introductory phase of the interrogation the police informed appellant the probable charge would be attempted robbery. The police did not make any representations, threats, or inducements to appellant or his father. Before questioning appellant the police explained to appellant's father the possibility of both adult criminal charges and waiver to felony court. During their consultation the father, an ex-police employee, advised appellant about his options, the eventualities, and also the implications flowing from a statement. After the parental consultation, appellant and his father both indicated to police that appellant wished to make a statement to the police. Neither appellant nor his father, who was present when appellant made his statement, ever intimated a desire to recant their prior waiver.

 Under these circumstances, appellant's confession was properly admitted into evidence against him at trial. *Miranda* does not require an accused be informed of the penal consequences or the specificity of charges. *Armour v. State* (1985), Ind., 479 N.E.2d 1294. Therefore, any alleged deficiencies regarding this type of discrete information does not render a confession involuntary.

## IV.

Appellant claims the thirty-year sentence imposed not only constitutes cruel and unusual punishment but is also manifestly unreasonable for a sixteen year old boy. He maintains that the trial court did not appropriately consider whether this imprisonment would result in undue hardship to appellant, citing Ind.Code § 35–38–1–7 (Burns 1985 Repl.). He contends that the failure to mitigate this sentence resulted in cruel and unusual punishment.

At appellant's sentencing hearing the trial court found the following to be aggravating factors: (1) appellant was previously detained at Boys School; (2) the plan to rob Fitch was formulated while at Boys School; (3) appellant committed this crime shortly after his release from Boys School; (4) appellant's criminal act could have resulted in the murder of Fitch. The only mitigating circumstance the court considered was appellant's age. The court imposed the presumptive sentence because appellant did not present sufficient mitigating circumstances which would have warranted the court in reducing the presumptive term of imprisonment.

 A punishment is excessive and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment but rather constitutes only purposeless and needless imposition of pain and suffering, or (2) is grossly disproportionate to the severity of the crime. *Gaunt v. State* (1983), Ind., 457 N.E.2d 211. Since this sentence reflects a concern for the acceptable goals of punishment and is not grossly disproportionate to the severity of the offense, it is not violative of the Eighth Amendment to the United States Constitution or Article 1, Section Sixteen of the Indiana Constitution.

 This Court will not alter a sentence set by the trial court if it is within the statutory bounds unless it appears to be manifestly unreasonable. *Vacendak v. State* (1982), Ind., 431 N.E.2d 100. The sentence imposed was not only within the

bounds of the sentencing statute but it is also such that a reasonable person would deem it appropriate in light of the nature of the offense and the character of the offender. The sentence imposed was not manifestly unreasonable. Judgment affirmed.

GIVAN, C.J., and PRENTICE and PI-VARNIK, JJ., concur.

HUNTER, J., not participating.